BRACKENRIDGE (FRAZIER v.). See Case No. 5,071.

BRACKENRIDGE (PAGE v.). See Case No. 19,661.

BRACKETT (DOWNER v.). See Case No. 4,043.

## Case No. 1,762.

BRACKETT et al. v. The HERCULES.

[Gilp. 184.][1]

District Court, D. Pennsylvania. Nov. 26, 1830.

SEAMAN—WAGES—LIEN ON PROCEEDS OF WRECK —MARITIME LIENS — ADMIRALTY — MONEY IN REGISTRY—DISTRIBUTION.

1. Where a portion of a vessel which has been wrecked, is saved by the exertions of the seamen, brought to the United States, and sold, they have a lien on the proceeds for their wages.

[Cited in New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 421.]

[See Pitman v. Hooper, Case No. 11,185; The Bowditch, Id. 1,717; The Massasoit, Id. 9,260; Cartwell v. The John Taylor, Id. 2,482. But see The Mary, Id. 9,186; Hainey v. The Tristram Shandy, Id. 5,906; Reed v. Hussey, Id. 11,646.]

2. Where a portion of a vessel which has been wrecked, and the seamen who formed its crew, are both brought to the United States on board of another vessel, the master of such vessel has a lien on the property for the freight, but not for the passage money of the seamen.

[See Foster v. The Pilot No. 2, Case No. 4,98.); Pitman v. Hooper, Id. 11,185; The Sailor Prince, Id. 12,218.]

3. Where a surplus remains in court from the proceeds of a sale, made for the benefit of a lien creditor, it may be appropriated in payment of other liens on the original property, but not of debts arising on contracts merely personal.

[Cited in The Fanny, Case No. 4,637; The Panama. Id. 10,703; Remnants in Court, Id. 11,697; Cox v. Murray, Id. 3,304; The Velocity, Id. 16,911.]

[See The Lady Franklin, Case No. 7,983; The Stephen Allen, Id. 13,361; Harper v. The New Brig, Id. 6,090; Gardner v. The New Jersey. Id. 5,233; The L. B. Goldsmith, Id. 8,152; Schuchardt v. The Angelique, 19 How. (60 U. S.) 239.]

4. Where a sum of money in court, has been decreed to be paid to a libellant, the court will not, on application of a creditor, appropriate it to a debt due by the libellant.

5. A contract between a passenger and the master of a vessel for the passage, is a personal contract, not cognisable in the admiralty.

[Cited in Cox v. Murray. Case No. 3,304; The Velocity, Id. 16,911. Disapproved in Stone v. The Relampago, Id. 13,486.]

In admiralty. On the 22d June, 1830, the libellants, who had been seamen on board the American brig Hercules, which was wrecked on the 25th April, 1830, at Guazacoalco, on the coast of Mexico, filed their bill against sundry articles saved from the brig and brought into the port of Philadelphia, on board of the schooner Packet, in which vessel the libellants also returned. The libellants claimed the full payment of their wages, and salvage for the articles saved. On the 25th June, the articles in question were sold by the marshal, under an order of the court, for the sum of nine hundred and thirty-four dollars and thirty-six cents. One half of these proceeds were paid, the libellants assenting thereto, to Samuel Baldwin, the own-

---

[1] [Reported by Henry D. Gilpin, Esq.]

er of the schooner Packet, for bringing the goods safely in the schooner to this port. Out of the remaining half, and also by consent of parties, two hundred and thirty-four dollars and thirteen cents were paid to the libellants. The residue remained in court to await a final decree. On the 26th June, Samuel. Baldwin, as owner of the schooner Packet, and Constant Chase, master of the brig Hercules at the time of the wreck, filed claims against the fund remaining in court; both praying that the passage money of the libellants might be deducted from the fund, and paid to the said Samuel Baldwin.

Mr. Grinnell, for libellants.

J. R. Ingersoll, for respondents and claimants.

HOPKINSON, District Judge. The libel in this case, filed on behalf of Joshua Brackett, Frederick Vandefort, Ebenezer Lakeman, Mark Henckle, A. P. Dole, Nicholas Read, Edward S. Carr, and James Wheaton, sets forth: That on the 21st October, 1829, some of the libellants shipped, at the port of Boston, on board the brig Hercules, Constant Chase, master, on a voyage described in the libel, at certain wages also set forth; others of them shipped at Savannah; and one of them at Havre de Grace. That on the 25th April, 1830, the brig, while proceding on her voyage, was wrecked near Guazacoalco, and that certain enumerated articles were saved from the wreck, which have been brought into the port of Philadelphia. The libellants state that they were employed in saving and securing the said articles until about the 28th April, 1830, and arrived at Philadelphia on the 17th June. The prayer of the libel is, that the articles so saved, and now in this port, may be attached; and that a decree be made that the wages due to them be paid thereout. They also claim a salvage on the articles saved.

The claim and answer of Constant Chase, the master of the brig, admits that the libellants were severally shipped on board the brig as they have set forth, and on the voyage described. It is alleged that Frederick Vandefort, Ebenezer Lakeman, and Mark Henckle, left the brig one afternoon without liberty; that they came on board in the evening after dark; that next morning, after orders to go to work, Vandefort and Lakeman refused to do any duty; and that it was necessary to put them in prison. This happened at Savannah. They remained in prison about eleven days, when the vessel was ready to sail. She sailed and arrived at Havre, where she remained about six weeks. At Havre, Vandefort left the brig without liberty about the 1st February, and sprained his ancle while absent, which confined him for thirty days, doing no duty. The respondent paid twelve dollars for his board on shore, and two dollars and twenty-nine cents for his doctor. Sometime in February, Lake-

man also was absent without liberty, and in a fight was so injured as to be kept from duty eight days. The brig sailed from Havre on the 2d March for Guazacoalco, where she arrived on the 16th April, and anchored outside of the bar. On the 24th a gale came on, by which she was driven on the beach and wrecked. The materials were got on shore on the 28th. The respondent endeavoured to sell them, but could not. He therefore made an arrangement with the owner of the schooner Packet, to bring the materials to the United States. A copy of this agreement is annexed. The respondent further states, that he applied to the owner of the schooner Packet; stated to him, that the men would die, if they should be left there; and referred him to the men themselves for a contract for their passage, which he understood was made afterwards. He understood Mark Henckle to say, that if he could get away in the schooner, he would give all he had coming to him in the brig. The schooner had six persons, all told, as her crew. The men were brought to Philadelphia and safely landed there. The usual price of a passage on deck is thirty dollars. The answer prays that a deduction may be made from the fund, out of which their wages are payable; and that the amount of the passage money may be decreed to the owner of the schooner Packet.

A claim and answer has also been filed by, or. on behalf of, Samuel Baldwin, owner of the schooner Packet. In it he sets forth; that on or about the 16th May last, an agreement was made between him and the libellants for their transportation to the United States; that they came out under that contract and were safely landed in the United States at Philadelphia on the 17th June last. He then prays that out of the fund now under the control of the court, so much may be decreed to him as will pay the amount of the passage money, each of the libellants being charged for himself. The respondent alleges that the possession of the materials has never been parted with, further than to place them in the hands of an auctioneer for sale, subject to the direction and control of the respondent; that he is advised that his lien for freight and passage money remains; and that the said fund is subject to the disposition of this court.

The replication of the libellants admits that they were brought in the schooner Packet from Guazacoalco to Philadelphia; but they deny that any contract for the transportation was made between them and Samuel Baldwin; and they further allege, that they assisted in navigating the schooner on her passage from Guazacoalco.

The contract referred to, made between Captain Chase and Samuel Baldwin, makes no provision for the passage of the crew of the Hercules, but contains the terms on which the latter will bring to the United States the articles saved from the wreck. This con-

tract has been fully complied with, and Samuel Baldwin has received one half part of the proceeds of the sales of those articles, according to the terms of the contract.

The claim of Samuel Baldwin, to be paid for bringing the libellants home, rests on his averment and proof, that an agreement was made between him and them for their transportation to the United States, by which, according to his proof, they were severally to pay him twenty dollars for their passage. Although the evidence in support of this agreement is not explicit or clear, yet, as the demand is altogether equitable in its principle, and reasonable in the amount, I shall consider that the libellants are truly indebted to Captain Baldwin in the sums he claims; that is, twenty dollars each, for bringing them in his schooner Packet from Guazacoalco to Philadelphia. The question for decision therefore is reduced to this point; whether or not, this court is authorised and required to order, that this claim shall be paid and satisfied out of the funds now in court, which proceeded from the sale of the articles brought home in the Packet, and saved from the wreck of the Hercules. On the arrival of the schooner at this port, the articles were landed and put in a storehouse, where they were attached by process from this court, issued on the petition of the libellants, and afterwards sold by the marshal, under the decree of the court. It is a question of law to be decided on settled principles, as I do not find that the precise case has ever been determined.

The original proceeding was a suit by the libellants against the property of the owners of the brig Hercules, for the recovery of wages alleged to be due to them for services rendered on board of the said brig. It is not questioned that they have a lien on this property for their wages. In this suit, such proceedings have been had, that the goods proceeded against were sold by the officer of the court, and the money brought into court to answer the claims of the libellants; here a third party steps in, and gives the court to understand that these libellants are severally indebted to him in a certain amount, and prays the court to satisfy these debts out of the moneys which may be awarded to the libellants, on their claim for wages; that is, the court, in this collateral way, are to try another cause, thus ingrafted on one properly before it; to decide that cause; and to execute their judgment by laying their hands on the money in court, and diverting it from the parties to whom their decree has awarded it, to pay their debts due to a person not a party to the suit in which the money was recovered. If the court may do this, a case can hardly occur in which it could be more justly done than in the present. The libellants have received an essential service from the claimant, whose demand for remuneration is proved to be reasonable; and the refusal to pay it has no warrant in equity or good faith. I am, however, bound to make my decree by the established principles of law, and not by my sense of what is right and just between the parties.

I know of no cases in which this court has undertaken to distribute moneys in court, in payment of a debt of one of the parties to a third person, except where such moneys are what is called surplus, or remnants; that is, money remaining after the satisfaction of the decree, under which and for which the property that produced the money was sold. The law of such cases was well considered in the case of Gardner v. The New Jersey [Case No. 5,233]; and, I believe, has remained as there pronounced, to this period, unimpeached in this district. The vessel was sold on a decree for wages. After payment of the sums adjudged to be paid to the libellants by the decree, there remained in court a surplus or remnant of money, the proceeds of the sales. The master filed a petition, stating, that during the voyage he had expended two hundred and fifty-seven dollars for pilotage, mariners' wages, and other things for the use of the ship. The physician claimed also one hundred and sixty-seven dollars, as due to him for services on board. They both prayed to be paid out of the surplus moneys remaining in court, from the sale of the ship. These claims were good and valid against the owner of the ship, to whom the surplus belonged. The judge says, that when he first came into the court, he had, in several instances, distributed surplus moneys under the idea that he had power to do so. This practice soon involved him in many difficulties and mistakes. He therefore settled some general rules for such cases; and the rule he adopted was, "that it shall appear, that a sum, claimed out of a surplus or remnant, is either of itself or in its origin, a lien on the ship, or other thing out of which the moneys were produced." He justifies going thus far by a reference to the civil law, the English chancery, and even the courts of common law. It seems to me to be an equitable rule, for as by the act of the court, the thing on which the lien rested, has been disposed of and taken from the creditor to satisfy a prior right or lien, it is just, that what shall remain, after that prior right is satisfied, should be appropriated to the subsequent claim and lien. The judge thought that the advances made by the master to mariners, and advances for necessaries in foreign ports, are liens on the ship. If the master pays demands, which were a lien on the ship, he represents the claimants, and the lien continues on the moneys produced by the sale of the ship. But he is of opinion that he could not award, from the surplus, the money due to the master for his own wages, because his contract is clearly personal, made with the owners, and not on the credit of the ship. On these princi-

ples, the judge declared that there was no foundation for the claim of the physician. He says; "if claims or liens are legally attached to things or moneys under the cognisance, or within the jurisdiction of the admiralty, this court has power to decide respecting them. But it does not follow, that claims independent of such things, or moneys produced from them, and mere personal demands on their owners, are within the reason of, or entitled to, the remedy prescribed by this principle." The physician could not have sued in the admiralty for his demand, which is personal on the owners of the ship.

In the case of Wolf v. Summers, 2 Camp. 632, Justice Lawrence says: "The master of a ship has certainly no lien on the passenger himself, or the clothes which he is actually wearing, when he is about to leave the vessel; but I think the lien does extend to any other property he may have on board. A certain sum is agreed to be paid for carrying the man and his luggage."

In the case before the court, the claimant, Captain Baldwin, has been paid for carrying the goods or things, which have produced the money in court; one half for bringing the whole, according to his contract. The passage of the men has no connection, either in fact or in law, or by the terms of his contract, with the transportation of the goods. On the goods, which have been sold by the decree of this court, Captain Baldwin had no claim of any sort. Their freight has been paid, and he was bound to deliver them at Philadelphia, for the use and benefit of the owners, as their property. He now claims the proceeds, not for any demand he has against the articles or the owners of the articles, but for the passage of the sailors, to whom they did not belong, and with whom he had a personal contract for bringing them to the United States. In making this contract he had no reliance on, he gave no credit to, these goods or their proceeds. These articles would not have been answerable, in the hands of the owners, for these debts of the sailors; how then can they be so here? Captain Baldwin could not, on any principle or in any shape, have proceeded against them in this or any other court, for these debts. There never was any lien on them for this demand; they could not have been detained from the owners on this account, who, on paying their freight, according to the contract, would have received them clear of any other charge by the carrier.

Nor has this court any jurisdiction to try and determine this demand. It is strictly a personal contract, not made at sea, nor for any cause cognizable in the admiralty. It must be prosecuted before a common law tribunal, in like manner as any other personal contract and debt. It is true the money now in court belongs to these men, by virtue of the decree of the court; but by what authority can I undertake to pay it to a particular creditor, or to distribute it among all their creditors? In the language of Judge Peters, I should soon "be involved in many difficulties and mistakes," by assuming this office. I must try the case of every creditor preferring a claim.

This is certainly a novel case. No claim like the present has ever before, in my knowledge, been presented to a court of admiralty. It is not a case of surplus and remnants, in which the petitioner, having a claim against the defendant in this court, asks for the money, which shall remain after satisfying the decree of the court in favour of the libellant; such creditor or petitioner, having had a claim or lien on the property, from which the moneys were produced. The peculiar feature of this case is, that the petitioner does not ask for the surplus funds of the defendant, but for the money which has been ordered and adjudged to be paid to the libellants. It is not a case of surplus or remnants to be appropriated in favour of a creditor, having a secondary right in the goods sold, but an application to take from the libellants the money which has been decreed to them, and appropriate it to the payment of one who claims to be their creditor. This is going far beyond any case of surplus and remnants, and has never, I believe, been attempted by any court of admiralty, which, in so doing, would try a cause collaterally, of which directly it could have no jurisdiction. As far as this power of distributing surplus funds has been exercised by the court, I am willing to continue it, but I have no disposition to carry it further. I must dismiss the claim of Captain Baldwin, although I should have been pleased to have done otherwise, as it appears to me to be just and moderate, and the objection to it altogether without equity or good reason.

Decree: That the wages of the libellants be allowed, to be paid according to a settlement agreed on by counsel; and that the claims of Samuel Baldwin and Constant Chase be dismissed with costs.